United States District Court
Southern District of Texas
**ENTERED**
May 17, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

R T HARDGE JR, §
§
      Petitioner, §
§
VS. § CIVIL ACTION NO. 4:15-CV-1565
§
LORIE DAVIS, §
§
      Respondent. §

## MEMORANDUM AND ORDER

This case is before the Court on petitioner R.T. Hardge Jr.'s petition for a writ of habeas corpus, and respondent Lorie Davis' motion for summary judgment. Having carefully considered the petition, the motion, all the arguments and authorities submitted by the parties, and the entire record, the Court is of the opinion that respondent's motion should be granted, and Hardge's petition should be dismissed.

## I.   Background

Harris was convicted by a jury of capital murder in the 180th Judicial District Court of Harris County, Texas. That court sentenced him to life imprisonment without the possibility of parole.

The First Court of Appeals summarized the facts of the case:

> On October 31, 2008, 78–year–old Luz Marti was found sexually assaulted and murdered in a narrow alcove between the stairs and the wall of the Sacred Heart Co–Cathedral in downtown Houston, Texas. Marti's body was discovered early that afternoon by Father Bob Brooks and Diantha Brennan, an administrative assistant for the church, who called 9–1–1. According to Brennan, Marti's face was badly

swollen and bruised, she was partially clothed, and her genital area was exposed.

Brennan recognized Marti immediately because Marti was a parishioner who had regularly attended Mass at the Co–Cathedral. Brennan testified that although homeless, Marti felt safe at the church and considered the church her home. Marti often slept on the top step of the stairs next to the alcove where her body was found. Brennan, who regularly saw Marti at Mass and spoke with her on several occasions, testified that although Marti was homeless and appeared to have a mental illness, she was always neat and clean and she behaved appropriately and never gave Brennan any cause for concern. Brennan testified that Marti always wore the same clothing (i.e., red and white checked Capri pants, white tennis shoes, a red cotton short-sleeved shirt, and a red sweater) and always carried the same belongings with her (i.e., a blue plastic rosary, several plastic crucifixes, two or three scapulars, 2 a Bible, a bilingual missal, a prayer book hymnal, and a red and white plastic ankle bracelet).

> 1. A scapular is a pair of small cloth squares joined by shoulder straps and worn under the clothing on the breast and back as a sacramental.

Sheridan Langford, a crime scene investigator with the Houston Police Department, was dispatched to the church that afternoon to photograph and videotape the crime scene. Langford testified that upon her arrival she observed Marti, a partially clothed elderly deceased woman, lying in a small alcove between the church's east wall and a staircase leading to a door into the cathedral. Neither the alcove nor the body was visible from the street, which was approximately 140 feet away.

According to Langford, Marti was wearing a maroon sweater, a white Adidas tennis shoe on her left foot, and a beaded ankle bracelet on her left ankle. Marti's pants and panties were missing and a blood stained, blue-green towel was partially covering her body. Langford testified that although

she did not know how long Marti's body had been in the alcove, signs of insect activity in one of Marti's nostrils indicated that Marti had been deceased for several hours.

Langford also found a green rosary and a cross next to Marti's left knee, a second tennis shoe near Marti's right knee, and a drawstring mesh bag with Marti's personal belongings next to Marti's head. Marti's state-issued identification card was inside the mesh bag, along with a Bible, a bilingual missal, and a prayer book hymnal that were wrapped up in an American flag bandana. A smaller blue bag with various toiletry items and a bus pass belonging to Marti was also found inside the mesh bag.

Trace evidence analyst Diana Wolfshohl, forensic investigator Vanessa Trevino, and HPD Investigator Arnauld Semmelrock were also dispatched to the scene later that afternoon. Wolfshohl, who documented the physical evidence found on or near Marti in the alcove, noticed that Marti was wearing a rosary and a scapular around her neck. Trevino documented the severity of Marti's injuries, including contusions to her face, knees and thighs, hemorrhaging in her eyes, and the bloody tears to her vaginal area. Based on body temperature, Trevino estimated that she had been deceased for twelve to twenty-four hours.[3] Semmelrock, one of the homicide investigators assigned to the case, testified that the blood and evidence collected at the scene was contained in the confined space where Marti was found, indicating that she was not moved there after she was injured and that the entire crime took place in that area.

> 2. Trevino testified that she took Marti's body temperature at 7:15 p.m. on October 31, 2009. Based upon Trevino's estimate, Marti died sometime between 7 p.m. on October 30, 2009 and 7 a.m. the next morning.

After Marti's corpse was removed from the crime scene, Langford obtained DNA samples from the blood stains on the north and east walls of the alcove. She also observed a sizeable bloodstain on the brick pavers underneath where Marti's groin had been.

While performing the autopsy, Dr. Roger Mitchell collected DNA samples from underneath Marti's fingernails, and semen from her vagina and rectum. This evidence resulted in a DNA profile which was entered into the national Combined DNA Index System (CODIS).

On January 5, 2009, Semmelrock received information that the suspect DNA profile matched [Hardge], who was arrested a few days later at a McDonald's about one block from the crime scene and brought to the police station for questioning. [Hardge] was calm and able to communicate, and he was offered food, water, and access to the bathroom. Although [Hardge] waived his statutory rights and spoke with investigators, he denied being at the crime scene, committing the crime, or knowing Marti. [Hardge] also adamantly denied frequenting downtown or associating with people who lived there. After investigators showed [Hardge] a photograph of Marti and told him that somebody had identified him as being with her, [Hardge] confidently stated that "ain't nobody in this world gonna say that I was with that woman right there, in this world. Nah." Investigators also asked [Hardge] for a sample of his DNA in order to verify his claim that he did not assault Marti. When [Hardge] refused their request and told them several times that they already had a sample of his DNA on file, investigators obtained a search warrant authorizing them to seize a sample.

Semmelrock also testified that in mid-February 2009 he attempted to search [Hardge]'s apartment, but when he arrived at the apartment complex, he discovered that the management had just evicted [Hardge] and discarded his belongings in a dumpster. Semmelrock testified that he retrieved a pair of women's red panties from the dumpster and submitted them for DNA testing.

The sample of [Hardge]'s DNA that investigators collected from [Hardge] was compared to the DNA evidence recovered from the scene by DNA analyst Robin Guidry.4 Guidry testified that [Hardge]'s DNA

could not be excluded from the vaginal and rectal swabs, the east and north wall swabs, from the blue rosary beads and scapular worn around Marti's neck and her beaded ankle bracelet, and from underneath the fingernails of Marti's left hand. Although semen was found on the red panties, there was not enough DNA to run a comparison. Guidry testified that the blue rosary beads that Marti was wearing around her neck had a mixture of DNA from Marti, [Hardge], and another unknown individual. She also testified that DNA analysis cannot determine when DNA was deposited on a tested substance, and that the DNA from the third contributor could have been from the person who originally sold the rosary to Marti.

> 3. Serologist Karen Ginco tested the evidence taken from the crime scene and Marti's body, and found blood and semen on the following items: the vaginal swab, the rectal swab, the north wall swab, the east wall swab, the blue rosary, the white-laced scapular, the cross necklace, and the blue towel.

Dr. Mitchell, the medical examiner who performed Marti's autopsy, concluded that Marti was sexually assaulted at or near the time of her death, and he ruled her death a homicide. According to Dr. Mitchell, Marti's death was caused by multiple acts of blunt force trauma, including a blow to her face severe enough to fracture her nose and cause her brain to bleed, and asphyxiation due to compression of her neck. Dr. Mitchell also testified that the strangulation marks on Marti's neck were in a beaded pattern consistent with the blue rosary that she was wearing when her body was discovered.

Dr. Mitchell testified that Marti's vagina was torn almost to her rectum. He also found a bruise on her rectum and another four-inch laceration or tearing of the wall of the vagina on the left side going in towards and reaching the cervix. Dr. Mitchell testified that these injuries were consistent with penile rape. Conceding that it was not possible for his

> examination to determine if the person who murdered Marti
> also sexually assaulted her, he testified that although it was
> *possible* that Marti's sexual assault and murder happened at
> different times, it was not *probable.* Because the injuries from
> Marti's sexual assault showed no evidence of healing and
> were consistent with the bruises to her face, neck, and body,
> Dr. Mitchell concluded that Marti was beaten, strangled, and
> sexually assaulted at or near the time of her death.

*Hardge v. State*, No. 01-11-01112-CR, 2013 WL 4680403, at *1-*3 (Tex. App.–Houston

[1st Dist.] Aug. 29, 2013).

Texas' First Court of Appeals affirmed the judgment.  *Id.*  The Texas Court of

Criminal Appeals ("TCCA") refused Hardge's petition for discretionary review.  *Hardge*

*v. State*, P.D.R. No. 1271-13 (Tex. Crim. App. Nov. 6, 2013).

On September 17, 2014, Hardge filed a state habeas corpus application.  The trial

court entered written findings and recommended that relief be denied, and the TCCA

denied relief on the findings of the trial court.  SH-03 at Action Taken Page.[1]

Hardge filed this federal petition for a writ of habeas corpus on May 28, 2015.

Respondent moved for summary judgment on September 10, 2015.  Hardge filed a

response on September 29, 2015.

## II.   The Applicable Legal Standards

### A.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of

the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  *See Lindh v. Murphy,*

---

[1]     "SH" refers to the transcript of Hardge's state habeas corpus proceeding.

521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under the "contrary to" clause, this Court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The solitary inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. §

2254 (d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The State court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997).

### B.  The Standard for Summary Judgment in Habeas Corpus Cases

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). Insofar as they are consistent with established habeas practice and procedure, the Federal Rules of Civil Procedure apply to habeas cases. *See* Rule 11 of the Rules Governing Section 2254 Cases. In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). Where a state prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, however, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997). Consequently, where facts

have been determined by the Texas state courts, this Court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

### III.   Analysis

Hardge's petition raises multiple claims for relief.  These are addressed in turn.

### A.   Competency to Stand Trial

In his first claim, Hardge contends that the trial court erred by not convening a hearing on Hardge's competency to stand trial.  Respondent contends that this claim is procedurally defaulted.

The trial court found Hardge incompetent to stand trial, and suspended the trial while Hardge received treatment at North Texas State Hospital. *See* CR at 35.[2]  After receiving treatment, Hardge was found competent to stand trial.  *Id.* at 36-41, 43.  Hardge now argues that the trial court erred by failing to hold a second competency hearing.

Hardge raised this claim in his state habeas corpus application.  The state habeas court found that the claim was procedurally barred because Hardge could have raised it on direct appeal.  SH-03 at 262, Action Taken page.

The procedural default doctrine may bar federal review of a claim.  "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment."  *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).  The Supreme Court has noted that

---

[2]      "CR" refers to the Clerk's Record.

> [i]n all cases in which a state prisoner had defaulted his
> federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the
> claims is barred unless the prisoner can demonstrate cause for
> the default and actual prejudice as a result of the alleged
> violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage
> of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").

To be "adequate" to support the judgment, the state law ground must be both "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 424 (1991). If the state law ground is not firmly established and regularly followed, there is no bar to federal review and a federal habeas court may go to the merits of the claim. *Barr v. Columbia*, 378 U.S. 146, 149 (1964). An important consideration in determining whether an "adequate" state law ground exists is the application of the state law ground to identical or similar claims. *Amos v. Scott*, 61 F.3d 333, 340-41 (5th Cir. 1995).

The state procedural bar at issue here is firmly established and regularly followed. *See*, *e.g.*, *Ex Parte Townsend*, 137 S.W.3d 79, 81-82 (Tex. Crim. App. 2004)("We reaffirm today that when a defendant has an adequate remedy at law, the merits of his claim may not be reviewed on an application for a writ of habeas corpus"). That bar precludes this Court from reviewing Petitioner's claim absent a showing of cause for the

default and actual prejudice attributable to the default, or that this Court's refusal to review the claim will result in a fundamental miscarriage of justice. *Id.* at 750.

"Cause" for a procedural default requires a showing that some objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule, or a showing of a prior determination of ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Amadeo v. Zant*, 486 U.S. 214, 222 (1988).   Hardge makes no such showing.

A "miscarriage of justice" means actual innocence.  To qualify for this exception to the procedural default rule Hardge must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the evidence now presented.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Hardge does not contend that he is actually innocent.  Therefore, his competency to stand trial claim is procedurally defaulted.

### B.   Ineffective Assistance of Counsel

Harris raises six claims of ineffective assistance of trial and appellate counsel.

#### 1.   Trial Counsel

To prevail on a claim for ineffective assistance of counsel, Petitioner

> must show that . . . counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to prevail on the first prong of the *Strickland* test, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 687-88.  Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances.  *Id.* at 688.  Review of counsel's performance is deferential.  *Id.* at 689.

On habeas corpus review, the petitioner must establish not only that he is entitled to relief under the *Strickland* standard, but also that the state habeas court's conclusion to the contrary was unreasonable..

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S.] at 689, 104 S.Ct. 2052; *Lindh v. Murphy,* 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*]*,* 556 U.S., at 123, 129 S.Ct. [1411], at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----**,** 129 S.Ct., at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

a.   <u>DNA Evidence</u>

Hardge contends that the DNA sample in the CODIS database was improperly obtained because he had no prior convictions for any offense that required submission of

a DNA sample.  He argues that his counsel rendered ineffective assistance by failing to have the DNA evidence suppressed.

Counsel filed a motion to suppress the DNA evidence.  The motion argued that the DNA sample entered into the CODIS database was obtained during an investigation into a rape charge that was ultimately dismissed, and that the use of the sample violated Texas law and constituted an unreasonable search and seizure under the Fourth Amendment. The trial court denied the motion.  CR at 98-100, SH-03 at 222.

On appeal, the Texas Court of Appeals observed that Hardge, through counsel, acknowledged at oral argument that the Texas statute requiring destruction of DNA samples and records upon acquittal was enacted after the dismissal of the prior charge against Hardge, and was not retroactive.  The Court of Appeals further noted that Hardge did not offer any proof that the DNA sample was obtained in connection with the dismissed rape charge, that Hardge was imprisoned and served community supervision for a 2000 conviction for unauthorized use of a motor vehicle, and that Texas law requires prison inmates and people on community supervision to provide DNA samples. *Hardge v. State*, No. 01-11-01112-CR, 2013 WL 4680403, at *9-*10 (Tex. App.– Houston [1st Dist.] Aug. 29, 2013).  Hardge thus fails to demonstrate that the DNA was obtained in violation of Texas law.  He offers no other argument as to how the use of the DNA sample violated his Fourth Amendment rights.   In the absence of any such violation, and in light of the fact that counsel nonetheless moved to suppress the evidence, Hardge fails to demonstrate either deficient performance or prejudice under *Strickland*.  He is not entitled to relief on this claim.

b.    Videotaped Statement

Hardge next argues that counsel failed to have his videotaped statement suppressed.  Counsel did, in fact, move to suppress the videotaped statement on the grounds that the statement was involuntary, coerced, and taken in violation of Hardge's right to counsel.  The trial court denied the motion.  CR at 64-65, SH-03 at 222.

The Court of Appeals noted that the trial court viewed the videotape of Hardge's statement and heard testimony from one of the investigators involved in the interview.  That witness testified that police provided Hardge with a snack and read him his rights, and that Hardge voluntarily waived his right to counsel.  *Hardge*, No. 01-11-01112-CR, 2013 WL 4680403, at *4.  The Court of Appeals noted that Hardge did "not articulate a factual basis for his coercion claim or identify any coercive tactics allegedly employed by the officers . . . ."  *Id.* at *11.  Hardge similarly fails to identify any evidence of coercion in this federal habeas corpus petition.

Because Hardge fails to identify any basis for the suppression of his statement, he fails to demonstrate any *Strickland* prejudice caused by counsel's performance with regard to the suppression motion.  He is not entitled to relief on this claim.

c.    Failure to Call Additional Witnesses

Hardge next argues that counsel rendered ineffective assistance by failing to call additional witnesses.  The Fifth Circuit has held that "complaints based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain."  *Alexander v. McCotter*, 775 F.2d 595,

602 (5th Cir. 1985) (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984)).   "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."  *Id.*

Hardge's petition does not identify any witnesses who he believes counsel should have called, but his response to the summary judgment motion identifies several.  The response also offers Hardge's theories on the testimony such witnesses would have offered.  He offers no proof that any  of the witnesses he identifies would actually have been available to testify, and nothing other than his own speculation that they would have had any information helpful to Hardge's case.  He thus fails to demonstrate that counsel did not call any helpful witnesses, and therefore fails to demonstrate either that counsel rendered deficient performance, or any *Strickland* prejudice.

2.   Appellate Counsel

Hardge raises several claims of ineffective assistance of appellate counsel.  A defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under State law.  *Evitts v. Lucy*, 469 U.S. 387, 395 (1985).  The *Strickland* two-prong standard applies to claims of ineffective assistance of appellate counsel.  *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992).  Appellate counsel, however, is not required to raise every possible non-frivolous claim on appeal. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

However, "a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. . . . Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999).

        a.     <u>Sufficiency of the Evidence</u>

Hardge first contends that appellate counsel was ineffective by failing to argue that the evidence was insufficient to support the underlying felony of aggravated sexual assault. In addressing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

As discussed above, DNA evidence linked Hardge to the sexual assault. Hardge's argument appears to rest on his contention that the DNA evidence was tainted because it was obtained as a result of a comparison to an improperly obtained sample in the CODIS database. That argument is addressed and rejected above. Because the DNA evidence linked Hardge to the sexual assault, there was no basis for appellate counsel to raise a sufficiency of the evidence claim, and counsel was not deficient for electing not to raise such a claim.

        b.     <u>Suppression of the DNA Evidence</u>

Hardge argues that appellate counsel rendered deficient performance by failing to argue that the DNA evidence should have been suppressed because it was seized in

violation of his Fourth Amendment rights.   Trial counsel moved unsuccessfully to suppress the DNA evidence on these grounds.   As discussed above, Hardge fails to demonstrate any Fourth Amendment violation, or any basis for suppression.   Because there was no grounds upon which to suppress the evidence, counsel was not deficient for electing not to argue that the evidence should have been suppressed.

c.      Ineffective Assistance of Trial Counsel

Hardge next contends that appellate counsel rendered ineffective assistance by failing to present a claim of ineffective assistance of trial counsel.   Texas courts, however, have stated that habeas corpus is the preferred vehicle for presenting claims of ineffective assistance of counsel because such claims often require evidence outside the trial record.

> A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App.1998).

*Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999)(footnote omitted). Because direct appeal is not the preferred vehicle for claims of ineffective assistance of counsel, appellate counsel was not deficient for failing to present such a claim.

C.     **Errors of State Law**

Hardge complains that the trial court erred by permitting the DNA evidence in violation of the Texas Government Code, and by admitting crime scene photos in violation of the Texas Rules of Evidence.      "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.   In conducting habeas review, a federal court is limited to deciding whether the conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

As discussed above, there is no showing that the admission of the DNA evidence violated Hardge's rights under the United States Constitution.  Similarly, Hardge makes no showing that the admission of the photos violated his constitutional rights.  Because these claims assert only violations of state law, they do not state grounds for federal habeas corpus relief.

D.     **Denial of Motion to Suppress**

Hardge contends that the trial court erred in denying his motion to suppress his videotaped statement.  As discussed above, in connection with Hardge's claim that counsel was ineffective for failing to have this statement suppressed, Hardge presented no evidence at trial that his statement was obtained in violation of his rights.  He presents no such evidence in this federal habeas corpus proceeding.  In the absence of any evidence that his statement was involuntary, coerced, or otherwise obtained in violation of Hardge's constitutional rights, there is no basis upon which to conclude that the trial court erred in denying Hardge's motion to suppress.

### E.  Sufficiency of the Evidence

In his final claim, Hardge contends that there was a variance between the indictment and the evidence presented at trial.  Respondent interprets this claim as arguing that the evidence was insufficient to prove Hardge's guilt of the crime charged.

The indictment charged Hardge with capital murder for intentionally causing the death of Luz Marti by striking her and compressing her neck while committing and attempting to commit aggravated sexual assault.  CR at 2-3.  As noted above, the evidence presented at trial included DNA evidence indicating that the semen recovered from the victim's body was deposited by Hardge, and evidence that the victim suffered blunt force trauma, asphyxiation caused by neck compression, and penile rape.

In addressing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The sufficiency of evidence is a mixed question of law and fact. *See Gomez v. Acevedo*, 106 F.3d 192, 198 (7th Cir. 1997), *vacated on other grds.*, 522 U.S. 801 (1997). Therefore, as noted above, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

The physical evidence of injury to the victim's body, the DNA evidence linking Hardge to the sexual assault, and expert testimony that the blunt force injuries and sexual

assault occurred close in time to each other was sufficient for a rational juror to find Hardge guilty beyond a reasonable doubt.   Moreover, the Texas Court of Appeals' conclusion that the evidence was sufficient, *see Hardge v. State*,  No. 01-11-01112-CR, 2013 WL 4680403, at *5-*8 (Tex. App.–Houston [1st Dist.] Aug. 29, 2013), is reasonable and is entitled to deference.

## IV.   Conclusion

For the foregoing reasons, respondent's motion for summary judgment is granted and Hardge's petition is dismissed with prejudice.

## V.   Certificate of Appealability

Hardge has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny COA *sua sponte*.   The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.")  A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request.  *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").   "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998).  A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further."  *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).  The Supreme Court has stated that:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds.  We hold as follows:  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This Court has carefully considered Hardge's petition and concludes that Hardge fails to make a substantial showing of the denial of a constitutional right.  The court concludes that jurists of reason would not find this Court's ruling debatable.  This Court concludes that Hardge is not entitled to a certificate of appealability.

VI.    **<u>Order</u>**

For the foregoing reasons, it is ORDERED as follows:

A.    Respondent Lorie Davis' motion for summary judgment (Dkt. No. 8) is

GRANTED;

B.    Petitioner R.T. Hardge, Jr.'s petition for a writ of habeas corpus (Dkt. No.

1) is DISMISSED WITH PREJUDICE; and

C.    No certificate of appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this

Memorandum and Order.

SIGNED on this 17th day of May, 2016.

_____
Kenneth M. Hoyt
United States District Judge